George V. Granade (State Bar No. 316050)
ggranade@reesellp.com
**REESE LLP**
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070

Michael R. Reese (State Bar No. 206773)
mreese@reesellp.com
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

Charles D. Moore (*pro hac vice* to be filed)
cmoore@reesellp.com
**REESE LLP**
100 South 5th Street, Suite 1900
Minneapolis, Minnesota 55402
Telephone: (212) 643-0500

Kevin Laukaitis (*pro hac vice* to be filed)
klaukaitis@laukaitislaw.com
**LAUKAITIS LAW**
737 Bainbridge Street, #155
Philadelphia, Pennsylvania 19147
Telephone: (215) 789-4462

*Counsel for Plaintiff Trisha Ickes*
*and the Proposed Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRISHA ICKES, *individually and on behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> AMC NETWORKS INC., *doing business as* AMC+, <br><br> Defendant. | Case No. 3:23-cv-00803 <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Trisha Ickes ("Plaintiff"), individually and on behalf of all others similarly situated (the "Nationwide Class," the "California Subclass," and the "California Retention Class," which, collectively, are the "Class" or the "Classes," all defined below) brings this Class Action Complaint against Defendant AMC Networks Inc., doing business as AMC+ ("Defendant" or "AMC+"), and makes the following allegations. Plaintiff's allegations are based on personal knowledge, on the investigation of her counsel, and upon information and belief.

## NATURE OF THE ACTION

1.     This is a class action lawsuit against AMC+ for: (i) its unlawful disclosure of Plaintiff's, the Nationwide Class members', and the California Subclass members' personally identifiable information ("PII") (including information that identifies a person as having requested or obtained specific video materials or services) to a third party, Meta Platforms, Inc., formerly known as Facebook, Inc. ("Meta" or "Facebook"), and (ii) Defendant's retention of records containing PII concerning Plaintiff and the California Retention Class members.

2.     AMC+ is a media production and distribution company that sells its content on multiple platforms.

3.     One line of AMC+'s business is streaming video services, whereby AMC+, through its website, the AMC+ application, and on-demand channels such as Apple TV+ and Amazon Prime, makes prerecorded audiovisual materials (*i.e.*, videos) available for consumers to request and obtain.

4.     AMC+ discloses the specific videos its consumers have requested or obtained to Meta, which owns the social networking website and app Facebook. AMC+ discloses this information to Facebook using the Meta Pixel ("Pixel"), a snippet of programming code AMC+ chose to install on its website that sends information about its users to Facebook. In this case, the information shared with Facebook includes the consumer's Facebook ID ("FID") coupled with the title of the video that the consumer requested or obtained on the AMC+ website.

5.     A consumer's FID is a unique sequence of numbers linked to that individual's Facebook profile. Entering "facebook.com/[FID]" into a web browser returns the Facebook profile of that particular person. Thus, the FID identifies a consumer more precisely than a name.

6.      AMC+ discloses to Facebook the consumer's FID alongside prerecorded video content the consumer requested or obtained together in a single transaction.

7.      Because the consumer's FID uniquely identifies an individual's Facebook account, Facebook, or any other person, can use the FID to quickly and easily locate, access, and view a particular consumer's corresponding Facebook profile.

8.      In simple terms, the Pixel installed by AMC+ captures and discloses to Facebook what video a specific consumer requested or obtained on the AMC+ website.

9.      AMC+ also maintains records which identify the content requested and obtained by its customers. The records consist of a consumer's account login information, payment information, and requests for specific video materials. Upon information and belief, AMC+ retains these records indefinitely.

10.     AMC+'s streaming video service operates in violation of federal and state laws designed to protect the confidentiality of consumers' content selection.

11.     AMC+ discloses consumers' PII in violation of the federal Video Privacy Protection Act, 18 U.S.C. § 2710 (the "VPPA"), and California Civil Code section 1799.3.

12.     The VPPA prohibits AMC+ from "knowingly disclos[ing]" consumers' PII absent the consumer's express written consent in a standalone consent form, 18 U.S.C. § 2710(b), where PII is defined as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider," § 2710(a)(3).

13.     California Civil Code section 1799.3 prohibits any "person providing video recording sales or rental services" from "disclos[ing] any personal information or the contents of any record, including sales or rental information, which is prepared or maintained by that person, to any person, other than the individual who is the subject of the record, without the written consent of that individual." CAL. CIV. CODE § 1799.3(a).

14.     In direct contravention of the VPPA, 18 U.S.C. § 2710(b), and California Civil Code section 1799.3, AMC+ knowingly and willfully discloses to Facebook its consumers' PII without first obtaining their express written consent.

15.     The VPPA further requires AMC+ to "destroy [PII] as soon as practicable, but no

later than one year from the date the information is no longer necessary for the purpose for which it was collected and there are no pending requests or orders for access to such information under [18 U.S.C. § 2710(b)(2) or (c)(2)] or pursuant to a court order." 18 U.S.C. § 2710(e). While there is no private right of action under the VPPA for violation of § 2710(e), *Rodriguez v. Sony Computer Ent. Am., LLC*, 801 F.3d 1045, 1054-55 (9th Cir. 2015), Plaintiff seeks to enforce § 2710(e) through the "unlawful" prong of California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.* ("UCL").

16.     In direct contravention of 18 U.S.C. § 2710(e), and therefore the UCL's unlawful prong, AMC+ retains records of its consumers' PII far beyond the time period necessary for the purposes for which the PII was collected.

17.     Plaintiff brings this action against AMC+ on behalf of the Nationwide Class for violation of the VPPA. Plaintiff also brings this action against AMC+ on behalf of the California Subclass for violation of California Civil Code section 1799.3; the UCL's unlawful, unfair, and fraudulent prongs; and California's Consumers' Legal Remedies Act, CAL. CIV. CODE § 1770 *et seq.* ("CLRA"); and for unjust enrichment. Plaintiff also brings this action against ACM+ on behalf of the California Retention Class for violation the UCL's unlawful prong by means of violation of 18 U.S.C. § 2710(e). She seeks an order enjoining AMC+ from further unauthorized disclosures and unlawful retention of consumers' PII; awarding damages consistent with the relevant statutes, attorney's fees, and costs; and granting such further relief as the Court deems just and proper.

## THE PARTIES

18.     Plaintiff Trisha Ickes resides in Richmond, California, in Contra Costa County. Plaintiff is a consumer of AMC+'s prerecorded video streaming platform and has requested and obtained prerecorded videos using her AMC+ subscription.

19.     Defendant AMC Networks Inc., doing business as AMC+, is a Delaware corporation with its principal executive office at 11 Penn Plaza, 18th Floor, New York, New York 10001. Defendant operates multiple content channels available by subscription through which it collects and retains the PII of its consumers, and discloses their PII to third party, Facebook.

1

**JURISDICTION AND VENUE**

2        20.     This Court has original subject matter jurisdiction over this class action pursuant to

3  28 U.S.C. § 1331 and 28 U.S.C. § 1367.

4        21.     The Court also has original subject matter jurisdiction over this putative class action

5  pursuant to the Class Action Fairness Act of 2005, under 28 U.S.C. § 1332(d), because: Plaintiff

6  is a citizen of California and Defendant is a citizen of Delaware and New York; the matter in

7  controversy is well in excess of $5,000,000 in the aggregate, exclusive of interest and costs; and

8  "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100, *see*

9  28 U.S.C. § 1332(d)(5)(B).

10       22.     The Court has personal jurisdiction over Defendant because Plaintiff's claims

11  against Defendant arise out of its conduct within California, including Plaintiff's use in California

12  of the AMC+ video streaming platform to request and obtain videos through her AMC+

13  subscription.

14       23.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial

15  part of the events or omissions giving rise to Plaintiff's claims occurred in this District, where

16  Plaintiff resides and used AMC+'s video streaming platform to request and obtain videos through

17  her AMC+ subscription.

18     **Divisional Assignment**

19       24.     Assignment to the Oakland or San Francisco Division is appropriate under Civil

20  L.R. 3-2(c) and (d) because a substantial part of the events or omissions giving rise to Plaintiff's

21  claims occurred in Contra Costa County, where Plaintiff resides and used AMC+'s video

22  streaming platform to request and obtain videos through her AMC+ subscription.

23

**LEGAL BACKGROUND**

24       25.     The VPPA was passed for the explicit purpose of protecting the privacy of

25  individuals' and their families' video rental or purchase information. Leading up to its enactment,

26  members of the United States Senate warned that "[e]very day Americans are forced to provide to

27  businesses and others personal information without having any control over where that information

28  goes." S. Rep. No. 100-599 at 6-7 (1988).

26.     While the preceding statement was true in 1988 when the VPPA was passed, the importance of legislation like the VPPA in the modern era of datamining is more pronounced than ever before. During a meeting of the Subcommittee on Privacy, Technology and the Law, a subcommittee of the Senate Judiciary Committee, that was held on January 31, 2012, "The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century," https://www.judiciary.senate.gov/meetings/the-video-privacy-protection-act-protecting-viewer-privacy-in-the-21st-century, Senator Patrick Leahy emphasized that point by stating: "While it is true that technology has changed over the years, we must stay faithful to our fundamental right to privacy and freedom. Today, social networking, video streaming, the 'cloud,' mobile apps and other new technologies have revolutionized the availability of Americans' information," *id.* (click "Download Statement" under "Senator Patrick Leahy").

27.     The VPPA defines "video tape service provider" as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

28.     The VPPA defines "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." § 2710(a)(1).

29.     The VPPA defines "personally identifiable information" to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." § 2710(a)(3).

30.     With certain exceptions that are inapplicable here, the VPPA prohibits a "video tape service provider" from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider." § 2710(b).

31.     Similarly, California Civil Code section 1799.3 prohibits any "person providing video recording sales or rental services" from "disclos[ing] any personal information or the contents of any record, including sales or rental information, which is prepared or maintained by that person, to any person, other than the individual who is the subject of the record, without the written consent of that individual." CAL. CIV. CODE § 1799.3(a).

32.     Additionally, the VPPA requires that any "person subject to this section shall

1    destroy [PII] as soon as practicable, but no later than one year from the date the information is no

2    longer necessary for the purpose for which it was collected and there are no pending requests or

3    orders for access to such information under [18 U.S.C. § 2710(b)(2) or (c)(2)] or pursuant to a

4    court order." 18 U.S.C. § 2710(e). The VPPA does not provide a private right of action for failing

5    to destroy records in the manner required by § 2710(e). *Rodriguez*, 801 F.3d at 1054-55. However,

6    the UCL's unlawful prong provides a private right of action for violation of other laws.

7    <u>**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**</u>

8    I.    **AMC+'s Disclosure of the PII of Plaintiff, the Nationwide Class Members, and the California Subclass Members to Facebook**

9

10        A.    **AMC+ Designed Its Website to Disclose Users' PII to Facebook, Including the Videos They Requested or Obtained Thereon**

11        33.    AMC+ operates a website in the U.S., accessible from a desktop or mobile device

12    at https://www.amcplus.com, or from a handful of applications and devices, such as the AMC+

13    app, through which consumers can access AMC+ content.

14        34.    The Meta Pixel, formerly referred to as the Facebook Pixel, was first introduced in

15    2013 and allows online businesses like AMC+ to build detailed profiles about its users by

16    collecting information about how they interact with their websites and facilitates the service of

17    targeted advertising to them.

18        35.    To take advantage of Facebook's targeted advertising and analytical services,

19    AMC+ intentionally installed the Meta Pixel on its website, thus making the knowing choice to

20    track consumers' PII and send it to Facebook.

21        36.    During the installation process, AMC+ chose certain options from a menu of

22    available "Events" to incorporate into the Pixel. The Pixel's Events track specific information

23    about the activity of users while they visit a company's website.

24        37.    AMC+ allows consumers to become digital subscribers to its streaming-video

25    platform and content through its website. To subscribe, the consumer must provide his or her name,

26    email address, billing address, and credit- or debit-card information.

27        38.    After completing the subscription process and gaining access to AMC+'s videos,

28    AMC+ discloses to Facebook, through the Meta Pixel, the FID of the consumer and the specific

1  video the consumer requested or obtained.

2  **B.      How AMC+ Discloses Digital Consumers' PII to Facebook**

3  39.     Businesses have the option of installing the Meta Pixel on their websites. Doing so

4  enables the business to collect information about how users interact with the business's website,

5  such as whether they initiate purchases on the website, what items they spend time viewing, and,

6  as relevant here, the video content the users request or obtain on a particular webpage.

7  40.     The Meta Pixel is a unique string of code businesses can embed on their websites

8  allowing them to track consumers' actions and report the actions back to Facebook.

9  41.     The Pixel can follow a consumer to different websites and across the Internet even

10  after clearing browser history.

11  42.     The Pixel allows Facebook to build detailed profiles about a website's users as

12  those users browse the web in order to serve targeted advertisements to those users.

13  43.     To take advantage of advertising and information services offered by Facebook,

14  AMC+ programmed the AMC+ website to include a Meta Pixel.

15  44.     When an AMC+ consumer requests or obtains videos on AMC+'s website, the

16  Pixel installed by AMC+ sends to Facebook certain information about the consumer and what

17  video materials the consumer requested or obtained. Specifically, AMC+ sends to Facebook the

18  video content name, its URL, and the consumer's FID.

19  45.     An FID is a unique and persistent identifier that Facebook assigns to each of its

20  users. Anyone who possesses an FID may use this number to quickly and easily locate, access, and

21  view the corresponding unique Facebook profile. Facebook admits as much on its website. Thus,

22  equipped with only an FID and the video content name and URL—all of which AMC+ knowingly

23  provides to Facebook—any ordinary person could learn the identity of the digital consumer and

24  the specific video or media content he requested on the AMC+ website.

25  46.     Simply by entering https://www.facebook.com/[unencrypted FID]/, any ordinary

26  person could identify the consumer accessing the video sent to Facebook in the same transmission

27  the consumer's FID was sent to Facebook.

28  47.     AMC+ could easily program its website so that this information is not disclosed to

Facebook.

48.     At all relevant times, AMC+ knew that the Meta Pixel disclosed PII to Facebook, identifying its consumers, including unencrypted FIDs. This is evidenced from, among other things, the functionality of the Pixel, including that the Pixel's sharing of information with Facebook enabled AMC+'s website to show targeted advertising to its digital consumers based on the content those digital consumers had requested or obtained on the website, including videos.

49.     AMC+ violates the VPPA and California Civil Code section 1799.3 by knowingly and willfully disclosing consumers' FIDs, together with the video content they requested or obtained, to Facebook.

## II.     AMC+'s Retention of Video Service History

50.     AMC+ sells prerecorded video content on its platform, which it allows consumers to request and obtain for viewing. Consumers can stream the video on a number of devices, such as their mobile devices, smart televisions, computers, or through other video providers outfitted to provide AMC+ content.

51.     A consumer can register and pay a monthly or yearly fee directly to AMC+ for access to its content, or the consumer can purchase access as an add-on to an existing video subscription service, such as Amazon Prime or Apple TV+. AMC+ currently costs $8.99 per month for a monthly subscription or $83.88 per year for a yearly subscription.

52.     To request and obtain a video, a consumer must create an account with AMC+, which requires consumers to submit personal information, such as their name, email address, billing address, and payment information. Where consumers access AMC+ content through a third-party intermediary, such as Apple TV+ or Amazon Prime, consumers must agree to have their personal information shared among the third party and AMC+.

53.     So long as the consumer is logged into an account that provides access to AMC+ content, requesting and obtaining a video to stream is simple: the consumer searches AMC+'s video library for a selection and then requests the video from within the interface by selecting "Play Now." So long as the consumer's payments are up to date, AMC+ content will begin playing.

54.     A consumer can request and obtain AMC+ video content as many times as he

1   desires so long as the consumer's payments are up to date.

2        55.    AMC+ requires the consumer's PII to effectuate the consumer's request to obtain

3   and view the video content.

4        56.    However, upon the conclusion of a consumer's viewing of a video, AMC+ has no

5   purpose to retain PII. The transaction for that viewing is complete. The consumer requested the

6   video; AMC+ provided the video for viewing; and the consumer's use of the video is completed

7   at the moment the user ceases to view the video.

8        57.    Because the user can watch a video as often and as many times as he desires without

9   paying more or less for his monthly or yearly subscription, AMC+ has no purpose in retaining

10  records of Plaintiff's and the California Retention Class members' video subscription histories.

11       58.    Yet AMC+ retains a record for every video the consumer requested and obtained

12  using his AMC+ subscription—and, in violation of the VPPA and the UCL's unlawful prong, it

13  retains this PII indefinitely.

14  **III.**   **AMC+'s Terms of Use, Privacy Policy, Cookie Policy, and "Do Not Sell My Personal Information" Overlay Do Not Plainly Disclose AMC+'s Use of the Meta Pixel**

15

16       59.    AMC+'s website includes its Terms of Use, a Privacy Policy, and a Cookie Policy.

17  *See AMC+ Terms of Use*, WWW.AMCNETWORKS.COM (last updated October 2022),

18  https://www.amcnetworks.com/terms-of-use/;       *AMC Networks Privacy Policy*,

19  WWW.AMCNETWORKS.COM (July 1, 2021), https://www.amcnetworks.com/privacy-policy/;

20  *Cookies and Tracking Technologies Policy*, WWW.AMCNETWORKS.COM (effective May 6, 2017),

21  https://www.amcnetworks.com/cookies/. None of these plainly informs consumers of AMC+'s use

22  of the Meta Pixel or its practice of sharing consumers' PII and video content choices with

23  Facebook.

24       60.    The Cookie Policy states, "Other third parties, including Facebook, may assist us

25  in delivering interest-based advertisements." *Cookies and Tracking Technologies Policy*,

26  WWW.AMCNETWORKS.COM (effective May 6, 2017), https://www.amcnetworks.com/cookies/.

27  The Cookie Policy does not elaborate on the details of any such assistance provided by Facebook.

28  *Id.*

61.     AMC+'s website also includes a link titled "Do Not Sell My Personal Information," which opens a window that overlays the current window. The text in the "Do Not Sell My Personal Information" overlay window does not inform consumers of AMC+'s use of the Meta Pixel or its practice of sharing consumers' PII and video content choices with Facebook by means of the Meta Pixel.

62.     Moreover, the VPPA requires that consent be obtained in a form "distinct and separate from any form setting forth other legal or financial obligations of the consumer." 18 U.S.C. § 2710(b)(2)(B)(i). AMC+, however, does not give consumers a standalone, or any, consent form disclosing AMC+'s practices at issue and requesting consumer consent. Hence, no consumer knew of or consented to AMC+'s use of the Meta Pixel or its practice of sharing PII and videos requested or obtained with Facebook.

63.     Additionally, AMC+'s Terms of Use, Privacy Policy, Cookie Policy, and "Do Not Sell My Personal Information" overlay never clearly and conspicuously provide consumers with the opportunity to opt out of AMC+'s use of the Meta Pixel or to opt out of AMC+'s practice of sharing consumers' PII and videos requested or obtained with Facebook by means of the Meta Pixel.

64.     The Privacy Policy states, "You may opt out of receiving interest-based advertising from us. To find out more about our advertising and how to opt out, please see our Cookies Policy." *AMC Networks Privacy Policy*, WWW.AMCNETWORKS.COM (July 1, 2021), https://www.amcnetworks.com/privacy-policy/. The Cookie Policy discusses opting out of things including analytics cookies and advertising cookies, but it never mentions opting out of AMC+'s use of the Meta Pixel or opting out of AMC+'s practice of sharing consumers' PII and videos requested or obtained with Facebook by means of the Meta Pixel. *Cookies and Tracking Technologies Policy*, WWW.AMCNETWORKS.COM (effective May 6, 2017), https://www.amcnetworks.com/cookies/.

**IV.    Plaintiff and the Class Members Suffered Harm as a Result of AMC+'s Privacy Invasions**

65.     AMC+ shared with Meta the PII of Plaintiff, the Nationwide Class members, and

the California Subclass members, including their video viewing histories and associated FIDs, which they reasonably expected would be kept private. And AMC+ did not destroy as soon as practicable (or within one year from the date the information was no longer necessary for the purpose for which it was collected), but instead retained indefinitely, the PII of Plaintiff and the California Retention Class members.

66.     The PII AMC+ obtained from Plaintiff and the Class members constitutes valuable data in the digital advertising-related market for consumer information. AMC+'s wrongful acquisition, use, and retention of Plaintiff's and the Class members' personal, private information deprived them of control over that information, and prevented them from realizing its full value for themselves.

67.     AMC+'s conduct has resulted in economic harm to Plaintiff and the Class members who were AMC+ subscribers in that they have paid subscription fees to AMC+ for services that they did not expect would subject them to the practices described herein, thereby diminishing the value of services for which they paid Defendant, and constituting loss. Plaintiff and the Class members didn't get what they paid for.

68.     Plaintiff and the Class members paid for access to AMC+'s website, and not another competitor's website, because they trusted that AMC+'s privacy practices comported with their privacy preferences.

69.     If Plaintiff, the Nationwide Class members, and the California Subclass members had known AMC+ discloses to Meta the PII of its consumers, including their video viewing histories and associated FIDs, Plaintiff, the Nationwide Class members, and the California Subclass members would not have subscribed for AMC+'s services or would have paid less for the subscription.

70.     If Plaintiff and the California Retention Class members had known AMC+ does not destroy their PII as soon as practicable, does not destroy their PII within one year from the date the information is no longer necessary for the purpose for which it was collected, and, instead, retains their PII indefinitely, Plaintiff and the California Retention Class members would not have subscribed for AMC+'s services or would have paid less for the subscription.

71.     AMC+'s practice of sharing consumers' PII and prerecorded video content with Facebook without their consent, and its failure to disclose this practice, caused AMC+ to profit from membership fees it would otherwise not have received.

72.     AMC+'s practice of failing to destroy consumers' PII as soon as practicable and, instead, retaining it indefinitely caused AMC+ to profit from membership fees it would otherwise not have received.

73.     Plaintiff's and the Class members' experiences and injuries are consistent with and borne out by research showing that consumers prefer to transact with online retailers that better protect their privacy, and are willing to pay a premium to purchase goods and services from websites that afford greater privacy protection. *See* J. Tsai, S. Egelman, L. Cranor & A. Acquisiti, CARNEGIE MELLON UNIV., *The Effect of Online Privacy Information on Purchasing Behavior: An Experimental Study* (June 2007), Information Systems Research, Vol. 22 at 254-68, *available at* https://www.researchgate.net/publication/220079706_The_Effect_of_Online_Privacy_Information_on_Purchasing_Behavior_An_Experimental_Study.

74.     The harms described above are aggravated by AMC+'s continued retention and commercial use of Plaintiff's and the Class members' PII, including their private video viewing histories.

**PLAINTIFF'S EXPERIENCE**

75.     Plaintiff Trisha Ickes is an AMC+ consumer and a Facebook user.

76.     Plaintiff first subscribed to AMC+ in 2021 and is still a subscriber.

77.     Plaintiff pays a yearly fee to AMC+ to request and obtain prerecorded video content through the AMC+ website. She paid approximately $83.88 in 2022.

78.     Plaintiff has requested or obtained prerecorded video content from AMC+'s website through her AMC+ subscription many times over the last two years.

79.     Plaintiff joined Facebook around 2009 and has had a Facebook account during the entirety of her time as an AMC+ consumer.

80.     Plaintiff visited AMC+'s website to request and obtain prerecorded video content using the same browser that she uses to log in to Facebook, including while she was logged in to

1    Facebook. She also uses the same device to request and obtain prerecorded videos on AMC+ that
2    she uses for Facebook.

3         81.    AMC+ disclosed to Facebook Plaintiff's FID coupled with the titles of the
4    prerecorded videos she requested or obtained and the URLs to access those prerecorded videos.

5         82.    Each time AMC+ disclosed Plaintiff's PII to Facebook, it violated her rights under
6    the VPPA and California Civil Code section 1799.3.

7         83.    Plaintiff requests and obtains prerecorded video content from AMC+, and AMC+
8    maintains records of Plaintiff's video content history.

9         84.    AMC+ retains Plaintiff's PII for longer than necessary for the purpose for which it
10   was collected, in violation of the federal VPPA and the UCL. AMC+ did not destroy Plaintiff's
11   PII as soon as practicable. AMC+ did not even destroy Plaintiff's PII within one year from the
12   date the information was no longer necessary for the purpose for which it was collected. Indeed,
13   on information and belief, AMC+ is retaining Plaintiff's PII indefinitely.

14                        **CLASS ACTION ALLEGATIONS**

15        85.    Pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure,
16   Plaintiff brings this action on behalf of herself and a proposed class defined as follows:

17        **The Nationwide Class.** All persons in the United States who subscribed to AMC+,
         requested or obtained video content from the AMC+ website, and used Facebook
18       during the time Meta's Pixel was active on AMC+.

19        86.    Additionally, pursuant to Rule 23(a), (b)(2), and (b)(3), Plaintiff brings this action
20   on behalf of herself and a proposed subclass defined as follows:

21        **The California Subclass.** All persons in California who subscribed to AMC+,
         requested or obtained video content from the AMC+ website, and used Facebook
22       during the time Meta's Pixel was active on AMC+.

23        87.    Additionally, pursuant to Rule 23(a), (b)(2), and (b)(3), Plaintiff brings this action
24   on behalf of herself and a proposed class defined as follows:

25        **The California Retention Class.** All California residents with AMC+ accounts
         who requested and obtained a video from AMC+ using their AMC+ subscription.
26

27        88.    Collectively, the Nationwide Class, the California Subclass, and the California
28   Retention Class are the "Class" or the "Classes."

89.     Excluded from the Classes are: (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Classes in accordance with Court-approved procedures.

90.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

91.     **Numerosity.** The sizes of the Nationwide Class, the California Subclass, and the California Retention Class are so large that joinder of all members of each Class is impracticable. The exact number of Class members is unknown, but AMC+ represents it has over 11 million consumers,[1] and Plaintiff estimates there are, at least, many thousands of consumers in the Nationwide Class, the California Subclass, and the California Retention Class.

92.     **Commonality and Predominance.** There are questions of law and fact common to the Nationwide Class, the California Subclass, and the California Retention Class. These questions predominate over any questions affecting only individual class members. Predominating common questions include but are not limited to:

        i.      whether Defendant engaged in the conduct alleged herein;

        ii.     whether Defendant knowingly disclosed Plaintiff's, the Nationwide Class members', and the California Subclass members' PII to Facebook;

        iii.    whether Defendant retained records of PII for Plaintiff and the California Retention Class members for longer than necessary for the purpose for which it was collected;

        iv.     whether Defendant's conduct violates the VPPA;

        v.      whether Defendant's conduct violates California Civil Code section 1799.3;

        vi.     whether Defendant's conduct violates the UCL;

---

[1] Masha Abarinova, *AMC reaches 11M paid subscribers, boasts strong series franchises*, WWW.FIERCEVIDEO.COM (Nov. 4, 2022 12:15pm), https://bit.ly/3Yc08On.

vii.     whether Defendant's conduct violates the CLRA;

viii.    whether Defendant was unjustly enriched by its conduct;

ix.     whether Plaintiff and the Class members are entitled to actual, statutory, or other forms of damages and other monetary relief; and

x.     whether Plaintiff and the Class members are entitled to equitable relief, including but not limited to injunctive relief and equitable restitution.

93.    Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers.

94.    **Typicality.** Plaintiff's claims are typical of the claims of the Class members because Defendant injured all Class members through the uniform misconduct described herein; AMC+ knowingly disclosed the PII of Plaintiff, the Nationwide Class members, and the California Subclass members to Facebook as described herein; AMC+ unlawfully retained Plaintiff's and the California Retention Class members' PII as described herein; and Plaintiff seeks the same relief as all Class members.

95.    Furthermore, there are no defenses available to Defendant that are unique to Plaintiff.

96.    **Adequacy of Representation.** Plaintiff is a fair and adequate representative of each of the Classes because Plaintiff's interests do not conflict with the Class members' interests. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendant. Furthermore, Plaintiff has selected competent counsel that are experienced in class action and other complex litigation. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the resources to do so.

97.    **Injunctive and Declaratory Relief.** The requirements for maintaining a class action pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to each of the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class as a whole.

98. **Superiority.** The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for reasons including but not limited to the following:

    i.    The damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct.

    ii.    Further, it would be virtually impossible for the Class members individually to redress effectively the wrongs done to them. Even if Class members themselves could afford such individual litigation, the court system could not. Individualized litigation would unnecessarily increase the delay and expense to all parties and to the court system and presents a potential for inconsistent or contradictory rulings and judgments. By contrast, the class action device presents far fewer management difficulties, allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

    iii.    The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendant.

    iv.    The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications or that would substantively impair or impede their ability to protect their interests.

99. **Notice.** Plaintiff and her counsel anticipate that notice to the proposed Classes will be effectuated through recognized, Court-approved notice dissemination methods, which may include United States mail, electronic mail, Internet postings, and/or published notice.

## **CLAIMS FOR RELIEF**

### **COUNT I**
**Violation of the Video Privacy Protection Act, 18 U.S.C. § 2710**
**(By Plaintiff on Behalf of the Nationwide Class)**

100. Plaintiff incorporates and realleges the paragraphs above as if fully set forth herein.

101. Plaintiff brings this claim against Defendant on behalf of the Nationwide Class for violation of the VPPA.

102. The VPPA prohibits a "video tape service provider" from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider." 18

1   U.S.C. § 2710(b).

2       103.    Under the VPPA, "video tape service provider" means "any person, engaged in the

3   business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded

4   video cassette tapes or similar audio visual materials." § 2710(a)(4).

5       104.    AMC+ is a "video tape service provider" as defined in § 2710(a)(4) because it is

6   engaged in the business of delivering audiovisual materials that are similar to prerecorded video

7   cassette tapes and those sales affect interstate or foreign commerce.

8       105.    Under the VPPA, "consumer" means "any renter, purchaser, or subscriber of goods

9   or services from a video tape service provider." § 2710(a)(1).

10      106.    Plaintiff and the Nationwide Class members are "consumers" under the VPPA

11  because they are subscribers of AMC+'s service of providing video content.

12      107.    Under the VPPA, "personally identifiable information" includes "information

13  which identifies a person as having requested or obtained specific video materials or services from

14  a video tape service provider." § 2710(a)(3).

15      108.    AMC+ knowingly disclosed Plaintiff's and the Nationwide Class members' PII—

16  specifically, their FIDs and the title and URL of the videos they requested or obtained—to

17  Facebook.

18      109.    This information constitutes personally identifiable information under 18 U.S.C. §

19  2710(a)(3) because it identified Plaintiff and each Nationwide Class member to Facebook as an

20  individual who requested or obtained AMC+'s video content, including the specific video

21  materials requested or obtained on AMC+'s website. Indeed, anyone with an FID could identify

22  the individual associated with it simply by entering "facebook.com/[FID]" into a web browser.

23      110.    AMC+ never obtained from Plaintiff or any Nationwide Class member informed,

24  written consent to the disclosure of their PII to Facebook (as described herein), "in a form distinct

25  and separate from any form setting forth other legal or financial obligations" of Plaintiff and the

26  Nationwide Class members. *See* 18 U.S.C. § 2710(b)(2)(B)(i).

27      111.    AMC+ never obtained from Plaintiff or any Nationwide Class member informed,

28  written consent that, at the election of Plaintiff and the Nationwide Class members: (I) was given

1  by Plaintiff and the Nationwide Class members at the time AMC sought to make the disclosure of

2  Plaintiff's and the Nationwide Class members' PII to Facebook, or (II) was given by Plaintiff and

3  the Nationwide Class members for a set period of time not exceeding 2 years or until consent was

4  withdrawn by Plaintiff and the Nationwide Class members, whichever was sooner. *See* §

5  2710(b)(2)(B)(ii).

6  112.  AMC+ never provided an opportunity, in a clear and conspicuous manner, for

7  Plaintiff or the Nationwide Class members to withdraw consent on a case-by-case basis or to

8  withdraw consent to ongoing disclosures, at Plaintiff and the Nationwide Class members' election.

9  *See* § 2710(b)(2)(B)(iii).

10  113.  AMC+'s disclosures to Facebook at issue are not limited solely to the names and

11  addresses of Plaintiff and the Nationwide Class members. *See* 18 U.S.C. § 2710(b)(2)(D).

12  114.  AMC+ has never provided Plaintiff and the Nationwide Class members with the

13  opportunity, in a clear and conspicuous manner, to prohibit the disclosure of their names and

14  addresses. *See* § 2710(b)(2)(D)(i).

15  115.  AMC+ has never provided Plaintiff and the Nationwide Class members with the

16  opportunity, in a clear and conspicuous manner, to prohibit the disclosure of their PII to Facebook

17  by means of the Meta Pixel.

18  116.  Under the VPPA, "the term 'ordinary course of business' means *only* debt

19  collection activities, order fulfillment, request processing, and the transfer of ownership." 18

20  U.S.C. § 2710(a)(2) (emphasis added).

21  117.  AMC+'s disclosure of Plaintiff's and the Nationwide Class members' PII to

22  Facebook as described herein was not incident to the "ordinary course of business" of AMC+, as

23  the VPPA defines that term. *See* § 2710(b)(2)(E). AMC+ did not disclose Plaintiff's and the

24  Nationwide Class members' PII to Facebook in connection with debt collection activities, for the

25  purposes of order fulfillment, for request processing purposes, or in connection with the transfer

26  of ownership.

27  118.  AMC+'s disclosures were made knowingly, as it programmed the Meta Pixel into

28  its website code knowing that Facebook would receive video titles and the consumer's FID when

a consumer requested or obtained a video.

119.    By disclosing Plaintiff's and the Nationwide Class members' PII, AMC+ violated their statutorily protected right to privacy in the videos they requested or obtained from AMC+. As a result, Plaintiff brings this claim on behalf of the Nationwide Class members pursuant to 18 U.S.C. § 2710(c).

120.    On behalf of herself and all members of the Nationwide Class, Plaintiff seeks to enjoin AMC+'s disclosures of PII; actual damages but not less than liquidated damages in the amount of $2,500; reasonable attorneys' fees and costs; such other preliminary and equitable relief as the Court determines to be appropriate; and all further relief the Court deems just and proper.

**COUNT II**
**Violation of California Civil Code Section 1799.3**
**(By Plaintiff on Behalf of the California Subclass)**

121.    Plaintiff incorporates and realleges the paragraphs above as if fully set forth herein.

122.    California Civil Code section 1799.3 prohibits any "person providing video recording sales or rental services" from "disclos[ing] any personal information or the contents of any record, including sales or rental information, which is prepared or maintained by that person, to any person, other than the individual who is the subject of the record, without the written consent of that individual." CAL. CIV. CODE § 1799.3(a).

123.    AMC+ is a "person providing video recording sales or rental services" under section 1799.3(a) because it is engaged in the business of delivering audiovisual materials that are similar to prerecorded video cassette tapes.

124.    AMC+ willfully disclosed Plaintiff's and the California Subclass members' PII—specifically, their FIDs and the title and URL of the videos they requested or obtained—to Facebook. This information constitutes: (a) the personal information of Plaintiff and the California Subclass members and/or (b) the contents of a record concerning Plaintiff and the California Subclass members that AMC+ prepared or maintained.

125.    Plaintiff and the California Subclass members did not consent in writing to AMC+'s disclosure of their PII to Facebook. AMC+'s disclosure of this information to Facebook therefore violated California Civil Code section 1799.3(a).

126.    Pursuant to California Civil Code section 1799.3(c), Plaintiff, on behalf of the California Subclass, seeks civil penalties of up to $500 for each violation of section 1799.3(a) with respect to Plaintiff and each of the California Subclass members. Plaintiff also seeks reasonable attorney's fees and costs under applicable law, including under California Code of Civil Procedure section 1021.5.

<u>**COUNT III**</u>
**Violation of California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.***
**(By Plaintiff on Behalf of the California Subclass)**

127.    Plaintiff incorporates and realleges the paragraphs above as if fully set forth herein.

128.    Plaintiff brings this claim against Defendant on behalf of the California Subclass for violation of the UCL.

129.    The UCL proscribes "any unlawful, unfair or fraudulent business act or practice." CAL. BUS. & PROF. CODE § 17200.

**Unlawful**

130.    A business practice is "unlawful" under the UCL if it violates any other law or regulation.

131.    AMC+'s business acts and practices are unlawful because they violate the VPPA as set forth above. They also violate the CLRA, for the reasons stated below. AMC+ has therefore committed multiple violations of the "unlawful" prong of the UCL.

**Unfair**

132.    AMC+'s conduct is unfair in violation of the UCL because it violates California's and the nation's legislatively declared public policy in favor of protection of consumer privacy. *See* S. Rep. No. 100-599 at 7 (1988) (finding that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems . . . create[s] privacy interests that directly affect the ability of people to express their opinions, to join in association with others, and to enjoy the freedom and independence that the Constitution was established to safeguard"); Cal. Bill Analysis, A.B. 375 Assem. at 13-14 (June 27, 2017), *available at*   https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201720180AB375# (click "06/27/18- Assembly Privacy And Consumer Protection") (noting that "[t]he unregulated

1    and unauthorized disclosure of personal information and the resulting loss of privacy can have

2    devastating effects for individuals, ranging from financial fraud, identity theft, and unnecessary

3    costs to personal time and finances, to the destruction of property, harassment, reputational

4    damage, emotional stress, and even potential physical harm")

5        133.    Further, AMC+'s conduct is unfair because it is unethical, unscrupulous, offensive,

6    and substantially injurious. The gravity of harm resulting from AMC+'s unfair conduct outweighs

7    any potential utility therefrom. The disclosure of Plaintiff's and the California Subclass members'

8    PII without their express consent raises significant privacy concerns, and any potential utility from

9    these disclosures (such as increased AMC+ revenue due to more targeted advertising) is

10   outweighed by their considerable harm to Plaintiff and the California Subclass.

11        134.    AMC+'s unfair business practices include disclosing Plaintiff's and the California

12   Subclass members' FID and viewing content to Facebook without authorization or consent,

13   causing harm to Plaintiff and the California Subclass members.

14        135.    AMC+ actually and proximately caused harm to Plaintiff and the California

15   Subclass members in that, among other things, they suffered economic injury by overpaying for

16   their subscriptions.

17        136.    For these reasons, AMC+ is in violation of the "unfair" prong of the UCL.

18                          **Fraud by Omission**

19        137.    AMC+'s conduct is fraudulent in violation of the UCL because its business acts

20   were likely to deceive a reasonable consumer.

21        138.    AMC+ knowingly concealed that it shares Plaintiff's and the California Subclass

22   members' FIDs and viewing content with Facebook.

23        139.    AMC+ had ample means and opportunities to alert Plaintiff and the California

24   Subclass members to the fact that it shares users' FID and viewing content with Facebook by

25   means of the Meta Pixel. For example, AMC+ could have disclosed this information in its Terms

26   of Use, Privacy Policy, or Cookie Policy.

27        140.    As the entity that collects and shares this information, AMC+ had a duty to disclose

28   that it shares this information to Facebook. AMC+ also has a duty to disclose this information

1    because it made partial representations about its data-sharing practices yet neglected to disclose

2    that it shares consumers' PII, including their video viewing histories and associated FIDs, with

3    Facebook through use of the Meta Pixel.

4        141.    AMC+ shared with Meta the PII of Plaintiff and the California Subclass members,

5    including their video viewing histories and associated FIDs, which they reasonably expected

6    would be kept private.

7        142.    The PII AMC+ obtained from Plaintiff and the California Subclass members

8    constitutes valuable data in the digital advertising-related market for consumer information.

9    AMC+'s wrongful acquisition and use of Plaintiff's and the California Subclass members'

10   personal, private information deprived them of control over that information, and prevented them

11   from realizing its full value for themselves.

12       143.    AMC+'s conduct has resulted in economic harm to Plaintiff and the California

13   Subclass members who were AMC+ subscribers in that they have paid subscription fees to AMC+

14   for services that they did not expect would subject them to the practices described herein, thereby

15   diminishing the value of services for which they paid Defendant, and constituting loss. Plaintiff

16   and the California Subclass members didn't get what they paid for.

17       144.    Plaintiff and the California Subclass members paid for access to AMC+'s website,

18   and not another competitor's website, because they trusted that AMC+'s privacy practices

19   comported with their privacy preferences.

20       145.    If Plaintiff and the California Subclass members had known AMC+ discloses to

21   Meta the PII of its consumers, including their video viewing histories and associated FIDs, Plaintiff

22   and the California Subclass members would not have subscribed for AMC+'s services or would

23   have paid less for the subscription.

24       146.    AMC+'s practice of sharing consumers' PII and prerecorded video content with

25   Facebook without their consent, and its failure to disclose this practice, caused AMC+ to profit

26   from membership fees it would otherwise not have received.

27       147.    Plaintiff and the California Subclass members suffered injury in fact, including lost

28   money or property, as a result of AMC+'s deceptive and fraudulent acts and omissions.

148.     Plaintiff and the California Subclass members accordingly seek appropriate relief, including (1) restitution under the UCL; and (2) such orders or judgments as may be necessary to enjoin AMC+ from continuing its unfair, unlawful, and fraudulent practices. There is no adequate remedy at law that would provide redress to Plaintiff and the California Subclass or ensure that AMC+ will not engage in the same data practices in the future. Plaintiff also seeks reasonable attorney's fees and costs under applicable law, including under California Code of Civil Procedure section 1021.5.

**COUNT IV**
**Violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770 *et seq.***
**(By Plaintiff on Behalf of the California Subclass)**

149.     Plaintiff incorporates and realleges the paragraphs above as if fully set forth herein.

150.     Plaintiff brings this claim against Defendant on behalf of the California Subclass for violation of the CLRA, seeking injunctive relief only.

151.     AMC+ is a "person" within the meaning of California Civil Code sections 1761(c) and 1770, and it provides "services" within the meaning of California Civil Code sections 1761(b) and 1770.

152.     Plaintiff and the California Subclass members are "consumers" as defined by California Civil Code sections 1761(d) and 1770.

153.     Plaintiff and the California Subclass members, on the one hand, and AMC+, on the other, engaged in "transactions" as defined by California Civil Code sections 1761(e) and 1770.

154.     The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer," including the following:

    i.    representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have, Cal. Civ. Code § 1770(a)(5);

    ii.    representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another, § 1770(a)(7);

    iii.    advertising goods or services with intent not to sell them as advertised, § 1770(a)(9); and

iv.    representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not, § 1770(a)(16).

155.    AMC+'s acts and practices, as alleged in this Complaint, violate the CLRA, California Civil Code sections 1770(a)(5), (7), (9), and (16), because its practice of sharing consumers' FIDs and viewing content with Facebook without their consent materially misled California consumers. In describing its services and privacy policies, AMC+ misrepresented and/or omitted the true nature of its information-sharing practices.

156.    AMC+'s practices implicate significant privacy concerns and caused economic harm to Plaintiff and the California Subclass members as alleged above.

157.    AMC+'s misrepresentations and omissions were material. Had Plaintiff and the California Subclass members known AMC+ engages in these business practices, they would not have subscribed for AMC+'s services or would have paid less for their subscriptions.

158.    AMC+ shared with Meta the PII of Plaintiff and the California Subclass members, including their video viewing histories and associated FIDs, which they reasonably expected would be kept private.

159.    The PII AMC+ obtained from Plaintiff and the California Subclass members constitutes valuable data in the digital advertising-related market for consumer information. AMC+'s wrongful acquisition and use of Plaintiff's and the California Subclass members' personal, private information deprived them of control over that information, and prevented them from realizing its full value for themselves.

160.    AMC+'s conduct has resulted in economic harm to Plaintiff and the California Subclass members who were AMC+ subscribers in that they have paid subscription fees to AMC+ for services that they did not expect would subject them to the practices described herein, thereby diminishing the value of services for which they paid Defendant, and constituting loss. Plaintiff and the California Subclass members didn't get what they paid for.

161.    Plaintiff and the California Subclass members paid for access to AMC+'s website, and not another competitor's website, because they trusted that AMC+'s privacy practices comported with their privacy preferences.

162.     If Plaintiff and the California Subclass members had known AMC+ discloses to Meta the PII of its consumers, including their video viewing histories and associated FIDs, Plaintiff and the California Subclass members would not have subscribed for AMC+'s services or would have paid less for the subscription.

163.     AMC+'s practice of sharing consumers' PII and prerecorded video content with Facebook without their consent, and its failure to disclose this practice, caused AMC+ to profit from membership fees it would otherwise not have received.

164.     AMC+'s CLRA violations caused Plaintiff and the California Subclass members to sustain ascertainable losses, to be determined according to proof at trial.

165.     Plaintiff seeks an order enjoining AMC+ from engaging in practices that violate the CLRA.

166.     An affidavit pursuant to California Civil Code section 1780(d) is attached hereto.

## COUNT V
### Unjust Enrichment
### (By Plaintiff on Behalf of the California Subclass)

167.     Plaintiff incorporates and realleges the paragraphs above as if fully set forth herein.

168.     Plaintiff brings this claim for unjust enrichment against Defendant on behalf of the California Subclass.

169.     Plaintiff and the California Subclass members conferred a benefit on AMC+ by paying it membership fees for online subscription services.

170.     AMC+ acted wrongfully by sharing Plaintiff's and the California Subclass members' FIDs and viewing content with Facebook without their consent.

171.     AMC+'s practice of sharing Plaintiff's and the California Subclass members' PII and viewing content with Facebook without their consent, and its failure to disclose this practice, caused it to profit from membership fees it would otherwise not have received.

172.     AMC+'s retention of these ill-gotten gains is unjust and inequitable.

173.     Plaintiff, on behalf of herself and the California Subclass, seeks restitution, restitutionary disgorgement, and all other appropriate relief permitted by the law of unjust enrichment, including reasonable attorney's fees and costs. There is no adequate remedy at law

that would provide redress to Plaintiff and the California Subclass members or ensure that AMC+ will not deploy the same data practices in the future.

<u>COUNT VI</u>
**Violation of California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.***
**(By Plaintiff on Behalf of the California Retention Class)**

174.    Plaintiff incorporates and realleges the paragraphs above as if fully set forth herein.

175.    Plaintiff brings this claim against Defendant on behalf of the California Retention Class for violation of the UCL's unlawful prong, by means of violation of 18 U.S.C. § 2710(e).

176.    AMC+ is a "video tape service provider" as defined in 18 U.S.C. § 2710(a)(4) because it is engaged in the business of delivering audiovisual materials that are similar to prerecorded video cassette tapes and those sales affect interstate or foreign commerce.

177.    Plaintiff and the California Retention Class members are "consumers" as defined in § 2710(a)(1) because they are subscribers of AMC+'s service of providing video content.

178.    The VPPA requires that any "person subject to this section shall destroy [PII] as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected and there are no pending requests or orders for access to such information under [18 U.S.C. § 2710(b)(2) or (c)(2)] or pursuant to a court order." § 2710(e).

179.    AMC+ collects PII from consumers in order to obtain payment from them and to provide them with the videos requested by them for viewing.

180.    AMC+ offers videos to consumers to request and obtain for as many views as they desire, so long as their subscriptions are up-to-date and paid for with AMC+.

181.    AMC+ does not destroy its consumers' PII as soon as practicable after the information is no longer necessary for the purpose for which it was collected, in violation of 18 U.S.C. § 2710(e). There are no relevant pending requests or orders for access to such information under § 2710(b)(2) or (c)(2) or pursuant to a court order.

182.    AMC+ retains Plaintiff's and the California Retention Class members' PII as it relates to videos they viewed with their AMC+ subscriptions.

183.    AMC+ has stored and continues to store the PII, as defined by 18 U.S.C. §

2710(a)(3), of Plaintiff and the California Retention Class members in violation of the protections established by the VPPA. AMC+ did not destroy the PII of Plaintiff and the California Retention Class members as soon as practicable. AMC+ did not even destroy the PII of Plaintiff and the California Retention Class members within one year from the date the information was no longer necessary for the purpose for which it was collected. Indeed, on information and belief, AMC+ retains the PII of Plaintiff and the California Retention Class members indefinitely.

184.    The UCL proscribes "any unlawful, unfair or fraudulent business act or practice." CAL. BUS. & PROF. CODE § 17200.

185.    A business practice is "unlawful" under the UCL if it violates any other law or regulation.

186.    AMC+'s business acts and practices are unlawful because they violate 18 U.S.C. § 2710(e) as set forth above.

187.    AMC+ has therefore violated the "unlawful" prong of the UCL.

188.    The PII AMC+ obtained from Plaintiff and the California Retention Class members constitutes valuable data in the digital advertising-related market for consumer information. AMC+'s wrongful retention of Plaintiff's and the Class members' personal, private information deprived them of control over that information, and prevented them from realizing its full value for themselves.

189.    AMC+'s conduct has resulted in economic harm to Plaintiff and the California Retention Class members who were AMC+ subscribers in that they have paid subscription fees to AMC+ for services that they did not expect would subject them to the practices described herein, thereby diminishing the value of services for which they paid Defendant, and constituting loss. Plaintiff and the California Retention Class members didn't get what they paid for.

190.    Plaintiff and the California Retention Class members paid for access to AMC+'s website, and not another competitor's website, because they trusted that AMC+'s privacy practices comported with their privacy preferences.

191.    If Plaintiff and the California Retention Class members had known AMC+ does not destroy their PII as soon as practicable, does not destroy their PII within one year from the date

the information is no longer necessary for the purpose for which it was collected, and, instead, retains their PII indefinitely, Plaintiff and the California Retention Class members would not have subscribed for AMC+'s services or would have paid less for the subscription.

192.    AMC+'s practice of failing to destroy consumers' PII as soon as practicable and, instead, retaining it indefinitely caused AMC+ to profit from membership fees it would otherwise not have received.

193.    Plaintiff and the California Retention Class members suffered injury in fact, including lost money or property, as a result of AMC+'s unlawful conduct.

194.    Plaintiff and the California Retention Class members accordingly seek appropriate relief, including (1) restitution under the UCL; and (2) such orders or judgments as may be necessary to enjoin AMC+ from continuing its unlawful practices. There is no adequate remedy at law that would provide redress to Plaintiff and the California Retention Class or ensure that AMC+ will not engage in the same data practices in the future. Plaintiff also seeks reasonable attorney's fees and costs under applicable law, including under California Code of Civil Procedure section 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the members of the Class, respectfully requests the Court to enter an Order:

A.    certifying the proposed Classes under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), as set forth above;

B.    declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C.    declaring that Defendant has committed the violations of law alleged herein;

D.    providing for any and all injunctive relief the Court deems appropriate;

E.    awarding statutory damages in the maximum amount for which the law provides;

F.    awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

1      G.      providing for any and all equitable monetary relief the Court deems appropriate;

2      H.      awarding Plaintiff her reasonable costs and expenses of suit, including attorney's

3 fees;

4      I.      awarding pre- and post-judgment interest to the extent the law allows; and

5      J.      providing such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all claims so triable.

Date: February 22, 2023          Respectfully submitted,

**REESE LLP**

By:  */s/ George V. Granade*

George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
**REESE LLP**
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070

Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

Charles D. Moore (*pro hac vice* to be filed)
*cmoore@reesellp.com*
**REESE LLP**
100 South 5th Street, Suite 1900
Minneapolis, Minnesota 55402
Telephone: (212) 643-0500

Kevin Laukaitis (*pro hac vice* to be filed)
*klaukaitis@laukaitislaw.com*
**LAUKAITIS LAW**
737 Bainbridge Street, #155
Philadelphia, Pennsylvania 19147
Telephone: (215) 789-4462

*Counsel for Plaintiff Trisha Ickes
and the Proposed Class*

1
2

**AFFIDAVIT OF GEORGE V. GRANADE**
**PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1780(d)**

3       Pursuant to 28 U.S.C. § 1746, I, George V. Granade, declare as follows:

4       1.      I am an attorney licensed to practice law in California, New York, and Georgia. I

5   am attorney at the law firm of Reese LLP, one of the counsel of record for Plaintiff Trisha Ickes

6   in the above-captioned action.

7       2.      Defendant AMC Networks Inc. has done, and is doing, business in California,

8   including in Contra Costa County and this District. Such business includes the marketing,

9   promotion, distribution, sale, and provision of its AMC+ subscription products.

10       I declare under penalty of perjury under the laws of the United States of America that the

11   foregoing is true and correct. Executed on February 22, 2023, at Santa Monica, California.

12                          By:  */s/ George V. Granade*
                                George V. Granade

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28