UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRISHA ICKES,<br><br>    Plaintiff,<br><br>    v.<br><br>AMC NETWORKS INC.,<br><br>    Defendant. | Case No. 23-cv-00803-SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER AND TRANSFERRING THIS CASE TO THE SOUTHERN DISTRICT OF NEW YORK**<br><br>Re: Dkt. No. 11 |

On June 23, 2023, the Court held a hearing on defendant AMC Network, Inc.'s motion to dismiss or transfer this case to the Southern District of New York pursuant to the first-to-file rule and/or 28 U.S.C. § 1404(a). For the reasons set forth in this order, the Court GRANTS defendant's motion to transfer.

**BACKGROUND**

AMC Networks Inc. ("AMC+") is a Delaware corporation with its principal executive office located in New York, New York. Compl. ¶ 19 (Dkt. No. 1). AMC+ "is a media production and distribution company that sells its content on multiple platforms." *Id.* ¶ 2. Its business includes "streaming video services, whereby AMC+, through its website, the AMC+ application, and on-demand channels such as Apple TV+ and Amazon Prime, makes prerecorded audiovisual materials (*i.e.*, videos) available for consumers to request and obtain." *Id.* ¶ 3. In order to access videos, a consumer must create an account with AMC+, which requires submitting personal information such as a name, email address, billing address, and payment information. *Id.* ¶ 52. If a consumer accesses AMC+ content through a third-party channel, such as Apple TV+, the consumer must agree to have their personal information shared between AMC+ and the third party. *Id.*

AMC+ discloses information about its subscribers to third party Meta Platforms, Inc., formerly known as Facebook. AMC+ discloses information via a programming code called the Meta Pixel, which was created by Meta and installed by AMC+ on the AMC+ website. The Meta Pixel "allows online businesses like AMC+ to build detailed profiles about its users by collecting information about how they interact with their websites and facilitates the service of targeted advertising to them." *Id.* ¶ 34. The information AMC+ shares with Meta includes a consumer's Facebook ID ("FID"), which is a "unique sequence of numbers linked to that individual's Facebook profile," and thus "identifies a consumer more precisely than a name," as well as information about the titles of the videos the consumer requested or obtained on the AMC+ website. *Id*. ¶¶ 4-5. The AMC+ website does not inform consumers of AMC+'s use of the Meta Pixel or its practice of sharing consumers' personal information and video content choices with Meta. *Id*. ¶¶ 59-64. In addition to disclosing consumers' information with Meta, AMC+ retains records of consumers' information far beyond the time period necessary for the purposes for which the information was collected. *Id*. ¶ 16.

**I.**     ***Ickes et al. v. AMC Networks Inc.*, 3:23-cv-00803-SI (N.D. Cal.)**

On February 22, 2023, Trisha Ickes, a resident of Richmond, California, filed this lawsuit against AMC+ alleging claims under the federal Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), and California law.

Ickes is an AMC+ consumer and first subscribed to AMC+ in 2021. *Id.* ¶ 76.[1] Ickes also uses Facebook and has had a Facebook account since 2009. *Id.* ¶ 79. Ickes alleges that AMC+ unlawfully disclosed her "personally identifiable information" ("PII") to Meta after she signed up for an AMC+ subscription and used the AMC+ website. Ickes also alleges that AMC+ unlawfully retained her PII beyond the time period necessary for the purposes for which the PII was collected.

---

[1] AMC+ states in its reply that "[a]s communicated to counsel, AMC+ has diligently searched its records for Plaintiff's name and email and has no evidence of Plaintiff ever subscribing to AMC+ -- a fact that to date, remain[s] unrebutted." Reply at 6.

Ickes seeks to represent a nationwide class for the VPPA cause of action and a California class for the California claims.

**II.    *McCoy et al. v. AMC Networks, Inc.*, 1:23-cv-00441 (S.D.N.Y.)**

On January 18, 2023, approximately one month before *Ickes* was filed, Gerald McCoy, Nicholas Nuñez, and Andy Germuga filed a putative class action lawsuit against AMC+ in the Southern District of New York. The *McCoy* complaint arose out of the same facts as those later alleged in *Ickes*, namely that AMC+ unlawfully disclosed personal information about AMC+ subscribers to Meta via the Meta Pixel, and that AMC+ unlawfully retained that information. Def's Request for Judicial Notice, Ex. 1 (Dkt. No. 12-1).[2] *McCoy* asserted claims under the VPPA and Minnesota and New York law, and the VPPA claim was brought on behalf of a nationwide class and the Minnesota and New York claims were brought on behalf of the Minnesota and New York subclasses. *Id.* On March 24, 2023, the *McCoy* plaintiffs voluntarily dismissed the complaint without prejudice. *Id.*, Ex. 2 (Dkt. No. 12-2).

**III.    *Vela et al. v. AMC Networks, Inc.*, 1:23-cv-02524 (S.D.N.Y.)**

Also on March 24, 2023, the same lawyers who filed *McCoy* filed a new lawsuit against AMC+ on behalf of two of the *McCoy* named plaintiffs (Nicholas Nuñez and Andy Germuga) and a new third named plaintiff, Ronald Vela. *Id.*, Ex. 3 (Dkt. No. 12-3). The *Vela* complaint is virtually identical to the *McCoy* complaint, and the *Vela* plaintiffs filed a "Related Case Statement" stating that "[t]hese allegations are substantially identical in both filings, but for the substitution of Plaintiff Vela for Plaintiff McCoy." *Id.*, Ex. 2. *Vela* was reassigned to the judge who had presided over *McCoy*, Judge Andrew Carter. In *Vela*, AMC+ has filed a motion to compel arbitration that has been fully briefed.[3]

---

[2] The Court GRANTS defendant's unopposed request for judicial notice of the *McCoy* and *Vela* filings.

[3] AMC+ contends that neither *Vela* nor this case belong in court because AMC+_subscribers agreed to a class action waiver and mandatory arbitration clause.

**DISCUSSION**

AMC+ moves to transfer this action pursuant to both the "first-to-file" rule and 28 U.S.C. § 1404(a). AMC+ argues that dismissal or transfer is in the interest of judicial efficiency and would avoid the risk of conflicting judgments because this case and *Vela* raise the same facts and claims about AMC+'s use of the Meta Pixel on the AMC+ website and AMC+ is already litigating these issues in New York.

**I.     First-to-File Rule**

Under the "first-to-file" rule, a district court has discretion to "transfer, stay, or dismiss an action when a similar complaint has already been filed in another federal court." *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 623 (9th Cir. 1991). The rule applies when "a complaint involving the same parties and issues has already been filed in another district." *Id.* at 625. Courts look to three factors when applying the first-to-file rule: "(1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues." *Z–Line Designs, Inc. v. Bell'O Int'l, LLC,* 218 F.R.D. 663, 665 (N.D. Cal. 2003). The parties and issues need not be identical for the first-to-file rule to apply. *See Kohn Law Gp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015). Rather, the crucial inquiry is whether the parties and issues substantially overlap. *Id.* The rule was designed to promote judicial economy, and therefore "is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter Sys., Inc. v. Medtronic, Inc.,* 678 F.2d 93, 95 (9th Cir. 1982).

**A.     First Case**

AMC+ argues that *Vela* should be considered the first-filed case because *McCoy* was filed first and *Vela* is a continuation of *McCoy*. AMC+ asserts that the dismissal of *McCoy* and filing of *Vela* on the same day should be treated as a functional amendment of the complaint because the only difference between *McCoy* and *Vela* was the substitution of one named plaintiff. AMC+ also

4

emphasizes that *Vela* was related to *McCoy* and assigned to the same judge who presided over *McCoy*.

Ickes argues that *McCoy* is moot for the purposes of the first-to-file rule because it was voluntarily dismissed and thus that this case is the first-filed. Ickes relies on cases where courts have declined to transfer cases pursuant to the first-to-file rule because the earlier-filed case was no longer pending in another district. *See Alul v. Am. Honda Motor Co., Inc.*, No. 16-cv-04384-JST, 2016 WL 7116934, at *5 (N.D. Cal. Dec. 7, 2016) (holding first-to-file rule did not apply and declining to transfer case to Central District of California "where there is no active case in the Central District and where no substantive rulings were ever issued").

The Court finds that due to the unusual procedural history of *McCoy* and *Vela*, it makes sense to treat those cases as one action for purposes of the first-to-file rule. If there were no currently pending case in the Southern District of New York, the Court would agree with Ickes that *McCoy* would be irrelevant to the first-to-file analysis. However, because *Vela* is pending before the same judge as *McCoy,* because *McCoy* and *Vela* are identical except for the substitution of one plaintiff, and because *Vela* was filed the same day that *McCoy* was dismissed, the Court agrees with AMC+ that the cases should be considered together and that the filing date of *McCoy* is relevant. The Court thus considers the *Vela* case to be the first-filed case for the purpose of the first-to-file rule.

### B.     Similarity of Parties

The Court also finds that the second factor – similarity of parties – is met. AMC+ is the same and only defendant in both cases. The plaintiffs in both cases are AMC+ subscribers who accessed video content from the AMC+ website and also had Facebook accounts. The nationwide putative VPPA class in this case completely overlaps with the nationwide class asserted in *Vela*. *Compare Ickes* Compl. ¶ 85 ("All persons in the United States who subscribed to AMC+, requested or obtained video content from the AMC+ website, and used Facebook during the time Meta's Pixel was active on AMC+"), *and Vela* Compl. ¶ 82 "(All persons in the United States who subscribed to AMC+, requested or obtained video content from the AMC+ website, and used Facebook during the time Facebook's Pixel was active on AMC+").

5

The Court is not persuaded that the existence of state law subclasses – a California class in *Ickes* and Minnesota and New York classes in *Vela* – precludes a finding of substantial similarity of parties. *See Young v. L'Oreal USA, Inc*., 526 F. Supp. 3d 700, 705 (N.D. Cal. 2021) ("The second factor merely demands that the parties be substantially similar and need not be identical."). Ickes argues that *Avery v. TEKsystems, Inc.*, No. 22-cv-02733-JSC, 2022 WL 3998499 (N.D. Cal. Aug. 31, 2022), is "on point" and that the Court should conclude, as Judge Corley did in *Avery*, that there is "minimal" overlap between the two cases because of the existence of different state law subclasses. However, *Avery* did not involve two cases with identical federal nationwide classes. Instead, the plaintiffs in *Avery* asserted purely California wage and hour claims, and Judge Corley was considering whether to transfer *Avery* to another district where a case (*Thomas*) was pending that asserted wage and hour claims under the federal Fair Labor Standards Act and Pennsylvania law. Judge Corley found that there was, at most, at 13% overlap in plaintiffs because some of the *Avery* plaintiffs had opted into the *Thomas* FLSA class before the opt-in deadline had passed. *See id*. at *3 ("Here, because the period to join the *Thomas* action has closed, the proper comparators are the putative class in *Avery* and the opt-in collective of plaintiffs in *Thomas* as it stands today . . . the overlap in potential plaintiffs between the two actions is roughly 13% . . . 87% of the putative *Avery* class is not and will not be represented in the *Thomas* action. These putative plaintiffs represent an overwhelming majority of the *Avery* class and would not be precluded by any finding in the *Thomas* Action. Thus, pausing or transferring the *Avery* action would not promote efficiency.").[4]  Here, in contrast, this case and *Vela* are both brought on behalf of the same putative

---

[4] For similar reasons, plaintiffs' reliance on *Wilkie v. Gentiva Health Services*, No. 10-cv-01451-FCD-GGH, 2010 WL 3703060 (E.D. Cal. Sept. 16, 2010), is misplaced. In that case, Judge Damrell denied a motion to transfer a wage and hour case because he found that "[o]n balance, there are more dissimilarities in the issues than similarities." *Id*. at *5. In addition to the existence of separate state law subclasses, it was not clear whether the proposed FLSA class in *Wilkie* included the same types of employees as the earlier-filed case. *See id*. at *3 ("As plaintiff argues, some employees included in the instant action may not ultimately be included in the *Rindfleisch* action. For example, it is unclear whether licensed vocational nurses, physicians assistants, and monitor technicians which likely fit under plaintiff's class definition, also fit within the *Rindfleisch* class. As such, the court cannot find at this juncture that substantial similarity exists between the nationwide classes in the two actions.").

nationwide class where there is close to 100% overlap, and thus rulings in *Vela* would have a preclusive effect in this case, and vice versa.

### C. Similarity of Issues

This case and *Vela* also raise the same core factual issues and the same or similar legal issues. Both cases involve AMC+'s use of the Meta Pixel and disclosure and retention of consumers' personal information. In both cases, AMC+ contends that the plaintiffs' claims are subject to arbitration clauses. If a court determines that the claims are not subject to arbitration, the common legal questions will include whether a nationwide VPPA class should be certified and whether AMC+'s use of the Meta Pixel violated the VPPA. To have two courts resolve these questions not only presents the possibility of conflicting judgments, but also a waste of judicial resources.

Ickes emphasizes that this case involves California claims and *Vela* involves New York and Minnesota claims. However, the state law claims under California, New York, and Minnesota law contain similar elements to a VPPA claim (such as whether disclosure of information was made knowingly and without the consumers' consent), and in the case of the *Ickes*' plaintiffs' claim under the Unfair Competition Law ("UCL"), a violation of the VPPA also constitutes a violation of the UCL. *See e.g., Ickes* Compl. ¶¶ 14-16 (alleging violations of VPPA and California law based on same facts and elements); *Vela* Compl. ¶¶ 10-12 (alleging violations of VPPA, New York and Minnesota law based on same facts and elements). The gravamen of the federal and state claims is the same: did AMC+ violate the law by disclosing consumers' information to Meta, and by retaining consumers' information longer than necessary?

Ickes also argues that this case "includes significant issues to be determined related to the value of PII and economic damages that are absent from *Vela*." Opp'n at 11 (Dkt. No. 18). Ickes notes that the *Vela* plaintiffs are seeking statutory damages, while the plaintiffs here allege that their PII "has value that AMC's wrongful acquisition and use of the PII prevented them from realizing" and "AMC's conduct resulted in economic harm" to consumers who either would not have subscribed to AMC+ or paid more for their AMC+ subscriptions than they otherwise would have if they had known about AMC+'s practices. *Id*. (citing various paragraphs of the complaint).

7

However, the first-to-file rule does not require that all factual and legal issues be identical, just that there be "substantial overlap." *Kohn Law Gp.*, 787 F.3d at 1240. Differences in the types of damages sought do not detract from the fact that both cases involve the same facts and the same or similar legal issues.

In light of the above, the Court concludes that transfer the case to the Southern District of New York based on the first-to-file rule will "maximize 'economy, consistency, and comity.'" *Id*. This Court grants AMC+'s motion to transfer based on the first-to-file rule. As discussed below, the Court also finds that transfer is appropriate under 28 U.S.C. § 1404(a).

## II.     28 U.S.C. § 1404(a)

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotation omitted).

To support a motion to transfer, the defendant must establish: (1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses, and will promote the interests of justice. *See Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D. Cal. 1992). The parties do not dispute that venue is proper in this district and that this case could have been brought in the Southern District of New York. The disagreement centers on whether transfer will serve the convenience of the parties and witnesses and promote justice.

In the Ninth Circuit, district courts have "discretion to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). "In this district, courts typically consider the following factors: (1) plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation

with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time to trial in each forum." *California v. Bureau of Land Mgmt.*, No. 18-CV-00521-HSG, 2018 WL 3439453, at *2 (N.D. Cal. July 17, 2018)

The Court finds that on balance, these factors weigh in favor of transfer. As to plaintiff's choice of forum, "[w]hen an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *see also Cardoza v. T-Mobile USA Inc.*, No. 3:08-cv-05120-SC, 2009 WL 723843, at *4 (N.D. Cal. Mar. 18, 2009) (stating that "[c]ourts tend to do so [give plaintiff's choice of forum less weight] where the plaintiff seeks to represent a nationwide class" and transferring California state law class action to the Western District of Washington pursuant to first-to-file rule and 28 U.S.C. § 1404(a)). The Court gives some, but not much, deference to Ickes' choice of forum.

The Court finds that the second and third factors support transfer. This district is more convenient for Ickes personally, although the Court notes that AMC+ states that it will depose Ickes in California if a deposition is needed. However, based on the nature of her claims – which focus on AMC+'s decision to install the Meta Pixel on its website and its policies and practices regarding disclosure and retention of consumer information – the Court anticipates that much of the witness testimony will come from AMC+, which is headquartered in New York. "Since the allegations in this case focus on defendant's conduct, the convenience of witnesses favor transfer." *Id.* at *5. The fourth factor – access to evidence – is neutral as the parties agree that most if not all of the evidence is electronically available.

The fifth factor is largely neutral because both courts are familiar with federal law and the state law claims share key elements and arise out of the same facts. While this Court has familiarity with California law, the *Vela* case already includes Minnesota law claims, and "other federal courts are fully capable of applying California law." *Id.*

Most importantly, "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Continental Grain Co. v. The FBL–585*, 364 U.S. 19, 26 (1960). As discussed earlier, this case and *Vela* arise out of the identical facts

9

and assert the same federal claims and similar state law claims. AMC+ states that it will seek to relate and/or consolidate this case with *Vela* upon transfer.

Finally, neither party discusses the local interest in the controversy or local court congestion and thus the Court does not consider these factors.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court GRANTS AMC+'s motion to transfer and TRANSFERS this case to the Southern District of New York.

**IT IS SO ORDERED**.

Dated: June 30, 2023

_____
SUSAN ILLSTON
United States District Judge